FILED _____ ENTERED
_____ LOGGED _____ RECEIVED

AUG 0 4 2017

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF SAMSUNG CELLULAR TELEPHONE MODEL: SM-J700P, FCC ID: A3LSMJ700P, HEX: 35562807578328, DEC: 089483879105735208 WITH TELEPHONE NUMBER 443-945-3588 | Case No. **17-2014SAG** |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Special Agent Brett E. Racine, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant pursuant to Federal Rule of Criminal Procedure 41 for a communication device, further described as a Samsung Cellular Telephone Model: SM-J700P, FCC ID: A3LSMJ700P, HEX: 35562807578328, DEC: 089483879105735208 with telephone number 443-945-3588 (hereinafter, "**Target Telephone**"). The information expected to be located is described in the following paragraphs and in Attachment A, Part I; the device shall be searched pursuant to the protocols in Attachment A, Part II.

2. I have been a Special Agent with the Federal Bureau of Investigation since 2003. I am currently assigned to the Baltimore field office, Bel Air resident agency; I am charged with investigating federal crimes ranging from bank and Hobbs Act robberies, fraud, crimes against children on the internet, terrorism and firearms and narcotics trafficking. Through my training and experience, I am familiar with the use of electronic devices, computers and cellular phones as a means to commit crimes and/or to keep evidence of crimes. My knowledge of such began at the new agent training at the FBI Academy in Quantico,

Virginia, where I attended a training on computer crimes and electronic devices; I continue to familiarize myself with new technology and search methods.

3. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. The facts set forth in this affidavit are based upon my personal knowledge and knowledge obtained during my participation in this investigation, including my review of documents related to this investigation, communication with others who have personal knowledge of the events and circumstances described herein, and information gained through my training and experience.

4. Based on my knowledge, training and experience, and the facts as set forth in this affidavit, there is probable cause to believe that evidence, fruits and instrumentalities of violations of 18 U.S.C. § 1958 (Use of Interstate Facility for Murder for Hire), 18 U.S.C. § 373 (Solicitation to Commit Crime of Violence) and 18 U.S.C. § 2 (Aiding and Abetting) will be found in memory and content of the **Target Telephone** identified herein. The specific evidence, fruits and instrumentalities of these violations is described in Attachment A, Part I. Furthermore, I believe the **Target Telephone** was one of the interstate facilities used in the murder for hire scheme.

## **PROBABLE CAUSE**

5. On October 24, 2016, Maryland State Police conducted a traffic stop on a vehicle in Elkton, Maryland, resulting in the seizure of heroin, cocaine, and a loaded handgun. The occupants were identified as Jennifer Swope (hereinafter, "JS"), Jacob Stevens (hereinafter, "JS2"), Isaiah Brown, RICARDO MAYNARD and a small child. All of the

adults were arrested. JS and JS2 were released on bail; Brown and MAYNARD were held at the Cecil County Detention Center pending trial.

6. Subsequent investigation revealed that MAYNARD forced the heroin on JS as the police officer approached the car during the traffic stop. It is also believed that JS2 witnessed MAYNARD foist the heroin on JS.

7. On April 3, 2017, I conducted an interview of an individual (hereinafter, "CHS") who had just been released from the Cecil County Detention Center. CHS had developed a relationship MAYNARD while incarcerated. CHS advised that MAYNARD and another inmate, Leroy ALEXANDER were members of the Bloods, a violent street gang, and were plotting to keep two individuals (JS and JS2) from testifying against MAYNARD.

8. MAYNARD asked CHS for assistance in the plot. On or about the day CHS was released from the detention center, MAYNARD gave CHS the telephone number for MAYNARD's significant other, RODRIGUEZ (443-945-3588). MAYNARD told CHS to set up a meeting with RODRIGUEZ who would provide CHS with photographs of and locations for JS and JS2.

9. On April 8, 2017, CHS met with RODRIGUEZ in Elkton, Maryland. The meeting was audio and video recorded; agents observed the meeting from a covert location. During the meeting, RODRIGUEZ and CHS discussed how to prevent the witnesses from testifying at MAYNARD's trial. RODRIGUEZ gave CHS photographs of JS and JS2 and provided their addresses; they discussed three different options for handling the witnesses. RODRIGUEZ and CHS agreed that CHS should first offer to pay JS and JS2 not to testify. The second option was to detain JS and JS2 at the time of trial at a location to prevent them

from testifying. Finally, RODRIGUEZ asked CHS to arrange for the murder of JS and JS2 if the other options did not work.

10. On April 11, 2017, CHS placed a recorded telephone call to the **Target Telephone** and spoke to RODRIGUEZ. CHS told RODRIGUEZ that the "whole gas line needs replaced" (indicating that JS and JS2 would have to be killed) and that it would cost $5,000. There were subsequent conversations between RODRIGUEZ and MAYNARD about the price and how they could pay.[1]

11. On April 15, 2017, RODRIGUEZ telephoned CHS from the **Target Telephone** and requested a "cleanup crew" for the father of her grandchild.[2] CHS advised RODRIGUEZ to think hard about this because it was the father of her grandchild and that he would be gone permanently. RODRIGUEZ said she understood. Subsequently, CHS sent text messages to RODRIGUEZ on **Target Telephone** counseling her against her request; RODRIGUEZ used **Target Telephone** to return messages in kind.

12. On or about May 21, 2017, MAYNARD mailed RODRIGUEZ a description of JS's vehicle.[3] This information was passed from RODRIGUEZ to CHS through a series of text messages sent from the **Target Telephone**.

---

[1] The calls between RODRIGUEZ and MAYNARD were conducted over a recorded line at the Cecil County Detention Center.

[2] I believe, based on a review of the phone call and discussions with CHS, that a "clean up crew" meant that RODRIGUEZ wanted to kill her grandchild's father.

[3] Agents obtained a copy of a letter sent from MAYNARD to RODRIGUEZ from the Cecil County Detention Center.

13. On June 22, 2017, RODRIGUEZ and MAYNARD were indicted in a three count indictment for use of an interstate facility in a murder for hire scheme, conspiracy, and solicitation to commit a crime of violence. Subsequently, on June 27, 2017, I arrested RODRIGUEZ pursuant to an arrest warrant and recovered the **Target Telephone** during a search incident to arrest. I advised RODRIGUEZ of her *Miranda* rights; RODRIGUEZ admitted that the telephone number for the recovered phone was 443-945-3588.

## CONCLUSION

14. Through my training and experience, and the information set forth above, probable cause exists to believe that the **Target Telephone** has evidence, fruits, and instrumentalities of violations of 18 U.S.C §§ 1958, 2 and 373. By this affidavit and application, I request that the Court issue a search warrant to search the **Target Telephone**.

Respectfully submitted,

_____
Brett E. Racine
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on _____ July, 2017

_____
Honorable Stephanie A. Gallagher
UNITED STATES MAGISTRATE JUDGE

17-2014SAG

## ATTACHMENT A

### Items Subject to Seizure

I. **Information to be obtained from Target Telephone**

    a. Phone contacts, phone numbers, phone call list, incoming calls, outgoing calls, missed calls;

    b. Text messages, multimedia messages, emails, any message from a messaging client;

    c. Calendar reminders, appointments, notes, memos, dates;

    d. Internet web browsing, application information, games, books;

    e. GPS location information, maps, saved points;

    f. Photos, videos, ringtones, music;

    g. Internet Protocol (IP) addresses and data

    h. Any and all of the above files which were deleted.

### Search Protocol

II. **Method of Seizure for Target Telephone**

With respect to the search of any of the items described in Part I above which are stored in the form of magnetic or electronic coding on computer media or on media capable of being read by a computer with the aid of computer-related equipment (including any cellular device or personal data assistant), the search procedure may include the following techniques (the following is a non-exclusive list, and the government may use other procedures that, like those listed below, minimize the review of information not within the list of items to be seized as set forth herein,

while permitting government examination of all the data necessary to determine whether that data falls within the items to be seized):

    a.    surveying various file "directories" and the individual files they contain (analogous to looking at the outside of a file cabinet for markings it contains and opening a drawer believed to contain pertinent files);

    b.    "opening" or cursorily reading the first few "pages" of such files in order to determine their precise contents;

    c.    "scanning" storage areas to discover and possible recover recently deleted files;

    d.    "scanning" storage areas for deliberately hidden files; or

    e.    performing key word searches or other search and retrieval searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are intimately related to the subject matter of the investigation.

If after performing these procedures, the directories, files or storage areas do not reveal evidence that is seizable under this warrant, the further search of that particular directory, file or storage area, shall cease.